**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAFAEL PEREZ-RODRIGUEZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | CASE NO. 10-CV-7039 |
| | ) | |
| Respondent. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Petitioner Rafael Perez-Rodriguez's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [1], the United States' response in opposition [5], and Petitioner's reply in support [8]. For the reasons stated below, Petitioner's motion is denied.

**I.      Background**

Petitioner Rafael Perez-Rodriguez, a citizen of Mexico, began using the identity of victim Arthur Louis Guajardo, a United States citizen, in 1990. Between 1990 and May 7, 2008, Petitioner used the victim's identity in a number of ways, including (1) to obtain the victim's Social Security Number ("SSN"), which petitioner used to work and obtain a U.S. passport; (2) to obtain an Illinois Commercial Driver's License ("CDL") and identification card; and (3) to enroll in Moraine Valley Community College ("MVCC") and apply for and receive federal student financial aid grants in the amount of $6,144.25. Petitioner used the victim's identity without his knowledge or permission. Petitioner sought to protect his stolen identity by paying

for a traffic ticket issued under the victim's name and contesting a child support claim that concerned the victim.

On May 2, 2008, the Government charged Petitioner by criminal complaint with knowingly possessing and using another individual's name, date of birth, and SSN with the intent to commit and in connection with passport fraud, in violation of 18 U.S.C. § 1028(a)(7). See Dkt. No. 1. On this same date, the Magistrate Judge Morton Denlow issued an arrest warrant for Petitioner and a search warrant for Petitioner's home authorizing the seizure of records, documents, correspondence, and other evidence of Petitioner's violation of § 1028(a)(7). *Id.* at 3. On May 7, 2008, federal agents arrested Petitioner at his home and executed the search warrant. When Petitioner was being processed by the arresting agent, he identified himself by his actual name, Rafael Perez-Rodriguez.

Two weeks after his arrest, on May 22, 2008, a grand jury returned a four-count indictment against Petitioner that set forth the following charges: knowingly using a passport secured by false statement to enter the United States from Mexico, in violation of 18 U.S.C. § 1542 (Count One); knowingly possessing and using the victim's name and date of birth during and in relation to the unlawful use of a passport described in Count One, in violation of 18 U.S.C. § 1028A(a)(1) (Count Two); knowingly possessing with the intent to use unlawfully five identification documents (each bearing the victim's identifiers) not issued lawfully for defendant's use, in violation of 18 U.S.C. §§ 1028(a)(3) and (b)(2)(B) (Count Three); and knowingly possessing and using the victim's name, date of birth, and SSN during and in relation to the unlawful possession of identification documents described in Count Three, in violation of 18 U.S.C. § 1028A(a)(1) (Count Four).

On June 23, 2008, Petitioner, through counsel, moved to dismiss Counts Two and Four of the indictment on the grounds that (1) the charges violated the Fifth Amendment's Double Jeopardy Clause, and (2) section 1028A's two-year mandatory sentence violated the Due Process Clause and conflicted with 18 U.S.C. § 3553(a). See Dkt. No. 23. After considering briefing from both sides on the issues raised in Petitioner's motion, this Court denied Petitioner's motion on the merits. See Dkt. No. 30.

On November 20, 2008, Petitioner was charged in a superseding indictment which added a wire fraud charge for Petitioner's use of the victim's identity to obtain grant money from the U.S. Department of Education to attend college, in violation of Title 18, United States Code, Section 1343. On November 25, 2008, Petitioner's counsel, Daniel Hesler, orally moved to withdraw, and on November 26, leave to withdraw was granted by this Court. That same day, the Court appointed Clarke Devereux, from the Federal Defender Panel, to represent Petitioner.

In preparation for trial, the Government moved *in limine* to admit evidence of certain statements Petitioner made regarding his false identity between 1990 and 2004. Petitioner, through counsel, objected to the admission of such evidence. After considering the arguments from both sides, the Court granted the Government's motion *in limine* in a memorandum opinion. See Dkt. No. 71. On January 20, 2009, Petitioner proceeded to a three-day jury trial. The Government presented evidence of Petitioner's offense conduct through: (1) dozens of items seized during a search of Petitioner's home that bore the victim's identifiers and Petitioner's actual name; (2) Petitioner's own statements; (3) the testimony of he victims; (4) Petitioner's financial aid applications submitted to MVCC; (5) Petitioner's employment file from Vans, Inc.; (6) stipulations setting out the interstate wiring of federal student aid funds from the Department of Education to MVCC; (7) the testimony of law enforcement agents; and (8)

Petitioner's girlfriend, an eyewitness to Petitioner's use of the passport in the victim's name. Petitioner did not present any witnesses in his defense.

On January 22, 2009, the jury found Petitioner guilty of all five counts charged against him. On February 23, 2009, Petitioner, through counsel, filed a motion for acquittal or, in the alternative, a new trial on the grounds that (1) the evidence presented at trial was insufficient to sustain Petitioner's convictions; and (2) that the district court erred in making certain evidentiary rulings prior to and during the trial, and in rejecting Petitioner's proffered jury instruction. The Court denied Petitioner's post-trial motion in a written memorandum opinion and order. See Dkt. No. 91.

Prior to Petitioner's sentencing, the U.S. Probation Office ("USPO") prepared a Pre-Sentence Report ("PSR"). According to the USPO's guidelines calculation, Petitioner's combined offense level for Counts One, Two, and Four was 14 and his criminal history category was II, for a guideline range of 18 to 24 months imprisonment. PSR at 5-8, 13. Next, the USPO noted that Petitioner's guideline sentence for Counts Three and Five was two years—the term of imprisonment required by 18 U.S.C. § 1028A(a)(1)—which was to run consecutively to any other term of imprisonment. *Id.* at 7, 13; see also U.S.S.G. § 2B1.6. Petitioner challenged the probation officer's inclusion of certain information in the PSR regarding his offense conduct and requesting a below-guideline sentence of 12 months with respect to Counts One, Two, and Four. *Id.* at 89. Petitioner also argued various 18 U.S.C. § 3553 factors in support of his request for a total sentence of 36 months. At sentencing, the Court resolved Petitioner's objections by ordering stricken certain portions of the PSR regarding petitioner's offense conduct and commenting that such information would have no bearing on Petitioner's sentence. The Court then heard arguments from both sides regarding the section 3553(a) factors that supported their

respective sentencing requests. The Court also heard from the victim and his wife, and from Petitioner, who apologized to the victim and the Government. The Court adopted the USPO's guidelines calculation set forth in the PSR and sentenced Petitioner to 57 months (21 months on Counts One, Two, and Four; 24 months on Count Three, and 12 months to run concurrently between Counts Three and Five).

In imposing the sentence, the Court noted the following 3553(a) factors: the seriousness of the offense and the impact on the victims; the history and characteristics of Petitioner, including those that were both in aggravation and in mitigation; the need to promote respect for the law, and provide just punishment and specific and general deterrence. The Court further stated that a deviation from Petitioner's guidelines range was not warranted under the circumstances of the case and that a sentence of 21 months in the middle of the range was sufficient. The Court also commented that but for the fact that Petitioner was going to be deported after his term of imprisonment was completed, the Court would have given Petitioner a sentence at the high end of the range. The Court also ordered Petitioner to pay restitution and entered a preliminary order of forfeiture.

Petitioner, through counsel, timely filed a notice of appeal on March 31, 2009. On September 1, 2009, Petitioner's counsel filed a brief pursuant to *Anders v. California* concluding that an appeal would raise issues that would be wholly frivolous. Counsel also filed a motion for leave to withdraw as Petitioner's court-appointed counsel. Petitioner opposed counsel's motion, but on December 22, 2009, the Seventh Circuit dismissed the appeal and granted counsel's motion to withdraw. *See United States v. Perez-Rodriguez*, 358 Fed. Appx. 700 (7th Cir. 2009). Specifically, the Seventh Circuit found that a sufficiency challenge to any of petitioner's convictions and a challenge to his sentence would be frivolous. *Id.* at 704-05. In addition, the

Seventh Circuit found that the district court correctly decided the government's motion *in limine* to admit evidence. *Id.* at 704.

On October 25, 2010, petitioner signed his *pro se* Petition to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("petition"). Petitioner's petition was received and filed by the Clerk on November 1, 2010. The Government filed a response to the petition, and Petitioner has replied in support of the relief that he requests.

## II.     Analysis

In his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, Petitioner contends that he had ineffective assistance of counsel and that there was a miscarriage of justice as a result. The United States' primary response is that Petitioner did in fact receive the effective assistance of counsel and that his other claims were previously addressed on direct review and are otherwise unsupported by the record. As set forth below, because Petitioner's contentions are wholly without merit, his petition is denied.

### A.     Legal Standard

Relief under § 2255 is an uncommon remedy because it requires the district court "to reopen the criminal process to a person who already has had an opportunity for full process." *McMahan v. United States of America,* 2009 WL 509869, at *1 (N.D. Ill. Mar. 2, 2009). A § 2255 motion to vacate to set aside or correct a sentence will be granted only if the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005)). If a § 2255 petitioner does not raise a claim in his direct appeal, that claim is barred from the Court's collateral review unless the petitioner can demonstrate cause for the procedural

default and actual prejudice from the failure to appeal (see *Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005)), that enforcing the procedural default would lead to a 'fundamental miscarriage of justice" (*Anderson v. Benik*, 471 F.3d 811, 815 (7th Cir. 2006), or that there has been a change of circumstances involving facts or law (*Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007)). Because claims of ineffective assistance of counsel usually involve evidence outside the trial record, such claims may be brought for the first time in a § 2255 motion.[1] See *Massaro v. United States*, 538 U.S. 500, 504 (2003).

### B. Petitioner's Claims

#### 1. *Ineffective assistance of counsel*

Petitioner first contends that he is being held unlawfully because he was denied his right to effective assistance of counsel. To succeed on his claim of ineffective counsel, Petitioner must show that his attorneys made "errors so serious that counsel was not functioning as 'counsel' guaranteed the petitioner by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner must demonstrate first that "his counsel's service did not meet an objective standard of reasonableness" and second "that there is a fair probability that but for his attorney's ineffectiveness, the result of the trial would have been different." *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000); *Strickland*, 466 U.S. at 690. To meet the first element of reasonableness, Petitioner "must identify the specific acts or omissions of counsel that form the basis of the ineffective assistance claim." *Strickland*, 466 U.S. at 689-90. The Court must then determine "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 689-90. As to the second factor, Petitioner must show that "counsel's errors were so serious as

---

[1] A claim of ineffective assistance of counsel which is based upon the trial record alone must be brought on direct appeal. *Olmstead v. U.S.*, 55 F.3d 316, 320 (7th Cir. 1995).

to deprive the petitioner of a fundamentally fair and reliable proceeding." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). A showing that counsel's errors had some "conceivable effect on the outcome of the proceeding" is not sufficient to demonstrate prejudice. *United States v. Ruzzano*, 247 F.3d 688, 696-97 (7th Cir. 2001).

Petitioner points to multiple errors that he believes were committed by counsel. Petitioner first contends that counsel failed to investigate facts or pertinent witnesses to the case. Yet Petitioner fails to identify what a further investigation into the facts would have produced or who may have been the potential witnesses that would have "exonerate[d]" him. Motion at p. 5. As noted by the Seventh Circuit, "when a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, that petitioner has the burden of providing the court with specific information as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003). Indeed, a petitioner must present "a comprehensive showing as to what the investigation would have produced." *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir. 1990). Here, Petitioner has failed to identify any exonerating facts or witnesses, let alone make a "comprehensive showing." Additionally, even if counsel had included additional facts and witness testimony, the case against Petitioner was so strong—given the various documents found in Petitioner's possession that bore the victim's identifiers, Petitioner's own statements, and the testimony of eyewitnesses to Petitioner's conduct—that the Court is hard-pressed to imagine how the alleged deficiency in counsel's performance could have prejudiced the case against Petitioner.

Next, Petitioner asserts that counsel failed to object to "misleading testimonies" at trial. Once again, Petitioner failed to specify which testimony was misleading or how his counsel's alleged failure to challenge such testimony affected the outcome of his trial. See Motion at p. 5.

In any event, at trial, Petitioner's counsel cross-examined all of the Government's witnesses save for the two victims of Petitioner's crimes. In addition, in the motion for acquittal or new trial, Petitioner's counsel challenged the sufficiency of the evidence and certain errors alleged to have been made by the Court, challenges the Court rejected soundly.

Third, Petitioner makes factual allegations regarding his counsel's performance at sentencing that simply are contradicted by the record in the underlying case. Petitioner claims that his counsel failed to object to the PSR and argue for a downward departure, or, in other words, a below-guidelines sentence. See Motion at p. 5. However, a review of Petitioner's sentencing memorandum and the sentencing proceedings as described above show that his counsel both challenged certain aggravating factors included by the Probation Officer in his PSR—which the Court struck—and also highlighted his upbringing, family background, and employment history as reasons for a below-Guidelines sentence. See also *Humphrey v. United States*, 896 F.2d 1066, 1070 (7th Cir. 1990) (no hearing is required when "the record standing alone conclusively demonstrates that a petitioner is entitled to no relief").

Fourth, Petitioner argues that his defense counsel "limit[ed] his memorandum urging suppression." Motion at p. 5. However, Petitioner's case did not involve a suppression issue, so there is no basis for the Court to evaluate this claim. To the extent that Petitioner is arguing that his counsel should have filed a motion to suppress, Petitioner does not identify which evidence should have been suppressed and how such evidence was unlawfully obtained.

Petitioner also claims that "cumulative errors and omissions deprived [him] of due process, speedy trial on Brady material." Motion at p. 5. As with most of his claims, he fails to offer any factual support or make any specific claim with regard to due process and *Brady v. Maryland* issues. Furthermore, even if there was a violation under the Speedy Trial Act, it

9

would be a violation of a statute and not the constitution, and only claims that raise jurisdictional or constitutional issues are actionable under § 2255. See *United States v. Timmerick*, 441 U.S. 780, 783-84 (1979). Violations of statutes, Rules of Evidence, or Rules of Criminal Procedure are not cognizable under § 2255 unless the violation results in a "complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424 (1962). There has been no such "miscarriage of justice" in this instance. *Id.* In any event, Petitioner's claim fails on the merits because he was indicted within the 30 days provided for by the Speedy Trial Act and the Court appropriately excluded time from the speedy trial clock leading up to Petitioner's trial.

In short, Petitioner has failed to demonstrate that his counsel's service did not meet an objective standard of reasonableness and, moreover, has failed to show *any* probability, let alone a "fair" probability, that but for his attorney's alleged ineffectiveness, the result of the trial would have been different. See *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000); *Strickland*, 466 U.S. at 690.

### 2. *Claims raised on appeal*

Petitioner also raises claims that have been decided on direct review. Case law clearly demonstrates that a petitioner cannot seek to relitigate claims raised on direct appeal in a § 2255 proceeding. See *Withrow v. Williams*, 507 U.S. 680 (1993); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995) (noting that a § 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal"); see also *U.S. v. Peleti*, 576 F.3d 377, 383 ("We note as well that Peleti's decision to raise this point on direct appeal means that it will not be available to him later. Once we have rejected a Sixth Amendment claim on direct appeal, the law of the case doctrine bars the defendant from raising it in a motion under 28 U.S.C. § 2255"). Although *res*

*judicata* does not apply in § 2255 proceedings, "the court may still exercise its discretion not to reconsider issues already decided at trial, on direct appeal, or in prior § 2255 proceedings." *Taylor v. United States,* 798 F.2d 271, 273 (7th Cir.1986). Indeed, in the absence of changed circumstances of fact or law, the Court need not reconsider an issue which was already decided on direct appeal. *Id.* In his direct appeal, Petitioner, through counsel, raised in a 28-page *Anders* brief the possibility of challenges to the sufficiency of the evidence against him, the jury instruction that was given on the knowledge element, and his sentence. The Seventh Circuit not only agreed with counsel's assessment that any of the potential challenges would be frivolous, but also explained why. See *United States v. Perez-Rodriguez*, 358 Fed. Appx. 700, 704 (7th Cir. Dec. 22, 2009). Thus, both this Court and the Seventh Circuit have addressed Petitioner's claims in detail, and this Court need not revisit his claims in this most recent attempt to overturn his conviction. Furthermore, Petitioner has failed to present any "newly-discovered" evidence that would justify reopening issues already decided on direct appeal. See *Olmstead v. U.S.*, 55 F.3d 316, 319 (7th Cir. 1995)

Despite the Court's firm belief that Petitioner's claims are without merit and have already been resolved in post-trial motions and on appeal, the Court briefly addresses his contentions. First, Petitioner contends that the Court erred by denying his post-trial motion for acquittal or a new trial. However, as set forth previously, there was ample evidence to support Petitioner's conviction—evidence showing not only that there were several documents proving that Petitioner used Guajardo's identity, but also that Petitioner knew he was unlawfully using it. Furthermore, in regard to whether Petitioner had knowledge that he was unlawfully using another's identify, the court of appeals highlighted the evidence presented at trial that "[Petitioner] had been told by the IRS that the Social Security number he was using was assigned

to someone else," and that Petitioner "had told the prosecutor's office in Lake County, Indiana, that he knew about the 'other' Arthur Guajardo." *Perez-Rodriguez*, 358 Fed. Appx. 700, 703. The court of appeals also explicitly rejected Petitioner's assertion that the Government did not prove that he had the requisite knowledge for the crime of identify theft, stating that "the evidence shows that he certainly knew in 2007 and 2008 when he committed the two violations of § 1028A." *Perez-Rodriguez*, 358 Fed. Appx. 700, 704. Thus, Petitioner clearly had knowledge of the unlawful identity theft, and there are no new "circumstances involving facts or law" that either the Court or court of appeals failed to address.[2]

Petitioner also raises several issues with respect to his sentencing. Petitioner contends that the Court unjustifiably relied on "the pre-sentence worksheet" to determine that his misdemeanors were aggravated felonies. First, at sentencing, neither party challenged the Guidelines calculations of the PSR, and the Court agreed and adopted the advisory Guidelines calculations found in the PSR. The Guidelines calculations show that Defendant had three criminal history points, which establishes a Criminal History Level of II. See Presentence Investigation Report at 8. Petitioner also contends that the sentence is greater than what the goals of 18 U.S.C § 3553(a) necessitate, as the Court did not adequately explain its chosen sentence nor uphold the standard set forth in the § 3553(a). Petitioner is incorrect. The transcript reveals that the Court considered the 3553(a) factors at length. The Court took into account Petitioner's history and characteristics, including his difficult childhood and lack of education. Petitioner additionally believed that a downward departure was warranted since he is ineligible for minimum security confinement, a drug-treatment program, and pre-release custody

---

[2] Petitioner also contends that the Court gave an inappropriate deliberate ignorance or willful blindness jury instruction, even over his objection. However, the record indicates that no such instructions were given at trial, nor were any such instructions proposed by the Government.

as a result of his status as deportable alien. See *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994) ("a downward departure may be appropriate if the defendant's status as a deportable alien is likely to cause him to be precluded" from benefits such as minimum security facilities and pre-release custody."). But this Court and the Seventh Circuit disagreed; in the court of appeals' words, "the duration of [Petitioner's] criminal conduct, when viewed in relation to the harm it caused Guajardo, foreclosed a more lenient sentence." *United States v. Perez-Rodriguez*, 358 Fed. Appx. 700, 705 (7th Cir. Dec. 22, 2009). In any event, this Court specifically factored Petitioner's likely deportation in to its decision, noting that it would have given Petitioner a sentence at the high end of the range but for the likelihood that Petitioner would be deported after his term of imprisonment was completed.

Petitioner further claims that he was eligible for the "Safety Valve" provision which gives courts "more flexibility in sentencing by permitting defendants to be sentenced below the minimum sentences fixed by statute," if they meet five specific elements. *United States v. Ramirez*, 94 F.3d 1095, 1099 (7th Cir. 1996). Petitioner contends that he fully disclosed all of the information that he knew about the particular offense, and thus was eligible for the safety valve. But even if Petitioner met the disclosure requirement (the probation department determined that he had not), he still had to meet the remaining criteria that are weighed when deciding to grant a sentence reduction. One criterion that he clearly failed to overcome is the criminal history factor, as this particular criterion necessitates that "the defendant not have more than 1 criminal history point, as determined under the sentencing guidelines." *Ramirez*, 94 F.3d at 1099. Both Petitioner and the Government pointed out in their sentencing memoranda that Petitioner had a criminal history category of II, which is equal to two or three criminal history points. See Sentencing Table at U.S.S.G. Chapter 5, Part A. The PSR demonstrated that

Petitioner had a total of three criminal history points (an offense level of II), and thus he was not eligible for the safety valve. See Presentence Investigation Report at 8. Petitioner has failed to come forward with any new evidence or argument to suggest that the calculation was wrong. Petitioner also maintained that the imposition of consecutive sentences by the Court constitutes double jeopardy. However, "in arriving at a total of 57 months, the district court first imposed concurrent terms of 21 months for the violations of § 1343, § 1542, and § 1028(a)(3)." *Perez-Rodriguez*, 358 Fed. Appx. 700, 704. Each of the terms running concurrently was for a separate offense, not for the same offense.

### 3. *Petitioner's reply brief*

In Petitioner's reply in support of his motion under § 2255, Petitioner appears to set forth further background and raises additional challenges to his conviction. To the extent that these arguments are comprehensible, the Court need not consider them because arguments raised for the first time in reply—even by a party proceeding *pro se*—are waived. See, *e.g.*, *Hinshaw v. U.S.*, 2010 WL 569948, at *1 (N.D. Ill. Feb. 16, 2010); *United States ex rel. Lash v. Cooper,* 952 F. Supp. 1245, 1253 (N.D. Ill. 1996) (citing *Wilson v. Giesen,* 956 F.2d 738, 741 (7th Cir. 1992)); *United States v. Joiner,* 847 F. Supp. 604, 607 (N.D. Ill. 1994), *aff'd* 78 F.3d 586 (7th Cir. 1996). Additionally, none of Petitioner's additional claims have merit, as both the Court and the Seventh Circuit have held previously.

\* \* \* \* \*

In sum, the Court is not persuaded that Petitioner is entitled to a remedy at law under 28 U.S.C. § 2255. Petitioner did not show that there was a violation of the Constitution or other laws of the United States or that the sentence was beyond the maximum allowed. Nor were any

of his collateral attacks, including claims of ineffective counsel and miscarriage of justice, sufficient to demonstrate that an alternative sentence was warranted. For all of these reasons, Petitioner's motion to vacate, set aside, or correct sentence is respectfully denied.

### III.  Conclusion

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence [1] is denied.

Dated: July 27, 2011

_____
Robert M. Dow, Jr.
United States District Judge